```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TONY HENDERSON,                  :
         Plaintiff
                                 :

         vs.                     :   CIVIL NO. 1:CV-07-1365

                                 :
LAWRENCE S. POLLACK,
         Defendant               :
```

*M E M O R A N D U M*

I.   *Introduction*

      The pro se plaintiff, Tony Henderson, filed this action against defendant, Lawrence S. Pollack, D.O., alleging that Dr. Pollack intentionally mistreated him for a work-related injury, thereby causing injury to his back. Dr. Pollack was treating Plaintiff as his doctor under the Pennsylvania Workers' Compensation Act. Plaintiff invokes 42 U.S.C. § 1983 in his complaint and seeks compensatory and punitive damages.

      We are considering two motions to dismiss filed by Defendant under Fed. R. Civ. P. 12(b)(6).[1] Defendant presents three arguments. First, Plaintiff has no civil-rights claims because section 1983 requires action under color of state law, and Dr. Pollack is not a state actor. Second, all claims, whether state or federal, are barred by the applicable statutes

---

[1] Usually, all grounds for dismissal are presented in one motion, but we see no prejudice to Plaintiff from considering both motions since the second one was filed while the first one was pending.

of limitations. Third, any state-law claims for medical malpractice must be dismissed for failure to comply with the Pennsylvania rule requiring a certificate of merit be filed to support any professional liability claims.

II.   *Standard of Review*

In considering a motion to dismiss, we must accept as true the factual allegations in the complaint, *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 190 n.1 (3d Cir. 2007), and construe any inferences to be drawn from the allegations in the plaintiff's favor. *Morrison v. Madison Dearborn Capital Partners III L.P.*, 463 F.3d 312, 314 (3d Cir. 2006). The court is not limited to evaluating the complaint alone; it can also consider documents attached to the complaint, other documents that are indisputably authentic, and matters of public record. *Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.2 (3d Cir. 2006).

III.  *Background*

Plaintiff's complaint alleges the following. On November 3, 2004, he was injured when a table with 600 pounds of sheet metal flipped onto him at work. (Doc. 1, Compl., p. 2.) He was sent to the Industrial Resource Center for evaluation. The center's assessment sheet, dated November 3, 2004, indicates he suffered a left shoulder injury and that Plaintiff reported he "felt a pulling" in the left shoulder "which progressively

worsened." (Doc. 1, Ex. A1.) The sheet also indicated he felt a "burning pain, rad's to L neck" and that Plaintiff could not raise his left arm above 45 degrees.

The center conducted a follow-up exam on November 10, 2004. According to the assessment sheet, Plaintiff complained of "left shoulder stiffness & pain radiating to upper and lower back areas." (*Id.*, Ex. A2.)

Plaintiff was referred to Memorial Hospital in York, Pennsylvania, and Dr. Pollack, who has a "place of business" on Fifth Avenue in York, saw him on November 11, 2004. (*Id.*, pp. 1-2.) Plaintiff told Dr. Pollack he was experiencing "severe pain in his neck and lower back and a numbness in the right arm" and alleged that Dr. Pollack told him that it did not "matter what you feel in your neck and lower back." (*Id.*). Defendant also allegedly stated that "[you] don't understand how Worker Compensation Insurance works and I am only going to see you for your shoulder injury." (*Id.*) According to Plaintiff, even after he told Dr. Pollack that he did not have a shoulder injury and that he could not raise his arms because of the pain in his upper back, Defendant "still refus[ed] to diagnose the cause of the pain and injury, "[s]tating that Plaintiff did not understand the rules that doctors have to follow when it came to Worker Compensation." (*Id.*) Instead, Defendant ordered an MRI arthrogram of the left shoulder, which was taken on November 17, 2004. It revealed no rotator cuff tear. (Doc. 1, Ex. A3.)

On November 30, 2004, Plaintiff met with Dr. Pollack and told him and a nurse that his pain had worsened, that it was becoming harder to walk and raise his arms, and that he was experiencing numbness in his right leg. (Compl., p. 2.) Plaintiff alleges that Dr. Pollack said "it could just be in your head" and he "refuse[d] to diagnose the injury." (*Id.*)

On December 9, 2004, Plaintiff met with Dr. Pollack for the third time and alleges that a nurse (who was also his case coordinator, apparently for workers' compensation) told him that Dr. Pollack thought Plaintiff was not truthful about his pain. (*Id.*) Again, Plaintiff told Dr. Pollack that his pain was increasing and that it felt like it was coming from his upper and lower back. (*Id.*) Defendant prescribed medication for the pain and "order[ed]" Plaintiff to continue working. (*Id.*)

On December 30, 2004, Plaintiff saw Dr. Pollack and expressed the same complaints, but Defendant told him that "he could not change doctors until he was seen by Defendant for 90 days." (*Id.*) Defendant prescribed a different pain medication and instructed Plaintiff to enter a work-hardening program. (*Id.*) Plaintiff began the program on January 1, 2004, and the staff told him that Dr. Pollack informed them that his injury was to the left shoulder, even though the MRI had shown otherwise. (*Id.*) According to Plaintiff, he attended five out of the nine sessions in the program but could not complete it because it was too painful. (*Id.*, p. 3.)

4

Plaintiff's final visit with Dr. Pollack took place on January 20, 2005. (*Id.*) Dr. Pollack allegedly informed him that "he was inconsistent with complaints." (*Id.*) Defendant "again refuse[ed] to diagnose" him. (*Id.*)

On January 26, 2005, Plaintiff visited another doctor to seek a second opinion. On his second visit to this doctor, the doctor referred him to a neurosurgeon. (*Id.*) The neurosurgeon ordered an MRI for Plaintiff's back, and told Plaintiff he needed two surgeries to correct injuries to his spine. Without them, Plaintiff "would suffer pain and could never return to his job." (*Id.*)

Plaintiff alleges that if Dr. Pollack had treated his back instead of his shoulder, his injuries would not be as severe, nor would the damage to his spine be permanent. (*Id.*) He avers that Dr. Pollack was "only looking out for the [i]nsurance [c]ompany and not [Plaintiff's] health," (*id.*), that he "put false statements" into Plaintiff's medical records to make it look like Plaintiff had a shoulder injury when there was no evidence of such an injury, and that Defendant's conduct was intentional. (*Id.*)

As additional support for the allegation that Defendant's conduct was deliberate, Plaintiff alleges that Defendant acted in retaliation for an earlier encounter he had had with Dr. Pollack. (*Id.*) He alleges that in 2002 Dr. Pollack allowed an intern to perform surgery on Plaintiff, and the

5

intern reattached his finger improperly, leaving him with permanent nerve damage. Plaintiff reported the incident to the "administration."

IV.   *Discussion*

   A.   *The Section 1983 Claims Fail Because There Was No State Action*

   As noted, Plaintiff invokes 28 U.S.C. § 1983. Section 1983 imposes liability on any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State" who deprives another of his federal constitutional or statutory rights. Action "under color of law" is the equivalent of state action under the Fourteenth Amendment. *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005). Thus, Plaintiff must show two things for a section 1983 claim: (1) the deprivation of a federal constitutional or statutory right (2) by state action. *Id.*

   From his opposition briefs, Plaintiff makes plain that he considers Dr. Pollack's conduct a violation of his federal constitutional rights, but he does not specify which rights. It seems to the court that the most likely right for the claim of medical mistreatment is the right to substantive due process, *see Torisky v. Schweiker*, 446 F.3d 438, 443-44 (3d Cir. 2006), since Plaintiff's complaint indicates that he saw part of his problem as being confined to the worker's compensation system

for treatment.[2] The retaliation claim would be based on the First Amendment. *See Thomas v. Independence Twp*., 463 F.3d 285, 296 (3d Cir. 2006).

However, we need not, and do not, decide whether Plaintiff had constitutional rights in these circumstances. As Defendant argues, there was no state action here. Hence, both claims fail under that requirement of section 1983.

*Leshko*, *supra*, provides the framework for our analysis. In that case, the Third Circuit noted that state-action cases can be broadly divided into two factual categories: (1) cases involving an activity; and (2) cases involving an actor. 423 F.3d at 340. In the first category, an activity is state action if it "is significantly encouraged by the state or in which the state acts as a joint participant." *Id.* In the second category, there is state action if an actor "is controlled by the state, performs a function delegated by the state, or is entwined with government policies or management." *Id.*

Plaintiff's section 1983 claims do not fall into the first category. For an analysis in this category, we look at the

---

[2] Defendant's guess as to the constitutional right was the Eighth Amendment, but the Eighth Amendment only applies to prisoners. *See A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 584 (3d Cir. 2004)(recognizing that the Eighth Amendment applies only to convicts). But it was not a bad guess. The Third Circuit has also analogized workers'-compensation claimants to convicts who have no choice of medical care. *See Sullivan v. Barnett*, 139 F.3d 158, 169 (3d Cir. 1998), *rev'd*, *Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

7

specific activity alleged in the complaint. *Id.* at 340-41 (looking at the plaintiff's claim that her former foster parents left her near a pot of hot water when she was two and one-half years old and then failed to seek immediate medical treatment after the plaintiff tipped the pot over on herself). Here, that would be Defendant's alleged intentional refusal to treat Plaintiff's neck injury rather than a nonexistent shoulder injury, and to do so for a retaliatory reason. But there are no allegations that Pennsylvania significantly encouraged or jointly participated in this conduct. It is also not enough for this encouragement or participation theory that Dr. Pollack was treating Plaintiff pursuant to Pennsylvania's statutory workers' compensation scheme. *Id.* (noting that Pennsylvania's comprehensive regulation of foster care or its funding of that care was not sufficient to turn the foster parents' conduct into activity either encouraged by the state or accomplished with its joint participation). More to the point is the Supreme Court's decision in *Am. Mfg. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52, 119 S.Ct. 977, 986, 143 L.Ed.2d 130 (1999), which ruled that Pennsylvania's regulation of worker's compensation did not turn on a private insurer's withholding of payment for medical care into state action.

Neither do Plaintiff's claims fall into the second category. In the second category, there is state action if an actor "is controlled by the state, performs a function delegated

by the state, or is entwined with government policies or management." *Id.* There are no allegations, nor does it appear that ones could be made, that Defendant is controlled by the state or is entwined with government policies or management. Instead, he is alleged to have a "place of business" in York, Pennsylvania, indicating he is in private medical practice, using independent judgment.

That only leaves for consideration whether Defendant "performed a traditionally and exclusively public function." *Id.* at 343. For this issue, following the lead of *Leshko*, we identify the function broadly and thus ask "whether the provision" of medical care for work-related injuries "is a traditionally exclusive governmental function." *Id.* It plainly is not, and never was. Before enactment of the Workers' Compensation Act in Pennsylvania, as it was in other states, an injured worker could not look to the state for care. Rather, he only had resort to traditional common-law tort remedies and had to sue his employer, if necessary, to recover compensation for his injuries. *See Sullivan*, *supra*, 526 U.S. at 44, 119 S.Ct. at 982, 143 L.Ed.2d 130 (briefly discussing the history of workers' compensation acts, mentioning Pennsylvania specifically).

Accordingly, because Dr. Pollack was not acting under color of law when he treated Plaintiff, we must dismiss Plaintiff's section 1983 claims against him. *Accord Barnes v. Lehman*, 861 F.2d 1383, 1388 (5th Cir. 1988)(treating physician's

9

conduct was not state action when it arose from his "medical judgment based on professional standards independent of the state").

> B.  *State-Law Claims Are Barred by the Failure to File the Certificate of Merit Required Under Pennsylvania Law*

It appears that Plaintiff is asserting a state-law medical malpractice claim as well as a claim under the Pennsylvania Patient's Bill of Rights. *See* 28 Pa. Code § 103.22.[3] In pertinent part, Pennsylvania law requires a plaintiff in a professional malpractice action to file a certificate of merit affirming either of two things: (1) that an appropriate professional has supplied a written statement that a reasonable probability exists that the defendant breached professional standards and that he caused the harm suffered by the plaintiff; or (2) that expert testimony is unnecessary to prosecute the claim. Pa. R. Civ. P. 1042.3(a)(1) and (3). The requirement for the filing of a certificate of merit is substantive, so it applies to this action even though it was filed in federal court. *Iwanejko v. Cohen & Grigsby, P.C.*, 2007 WL 2949054, at *4 (3d Cir. 2007) (nonprecedential); *Scaramuzza v. Sciolla*, 345 F. Supp. 2d 508, 509-10 (E.D. Pa. 2004). In state court, if the certificate is not filed within sixty days

---

[3] It does not appear to us that Plaintiff can pursue a cause of action under the Patient's Bill of Rights, but we need not resolve that issue to decide Defendant's motions.

10

of the filing the complaint (as required by Rule 1042.3(a)), under Rule 1042.6(a), the defendant is entitled to the entry of a judgment of non pros. In federal court, the equivalent is dismissal without prejudice. *See Hartman v. Low Sec. Corr. Inst. Allenwood*, No. 4:CV-04-209, 2005 WL 1259950, at *3 (M.D. Pa. May 27, 2005); *Walsh v. Consol. Design & Eng'g Inc.*, No. 05-2001, 2007 WL 2844829, at *6 (E.D. Pa. Sept. 28, 2007).

We see no alternative to dismissing the state-law claims without prejudice. Plaintiff failed to file the certificate of merit and has presented no valid reasons why that failure should be excused. We must do so even though dismissal without prejudice might nonetheless, in effect, be dismissal on the merits as the statute of limitations may bar the claims if Plaintiff attempts to refile. *See Hartman*, *supra*, 2005 WL 1259950, at *4.[4]

   C.  *Other Claims*

Plaintiff also appears to be asserting a federal claim based on a Patient's Bill of Rights, but he does not tell us which Bill of Rights he relies on, and our own research has been unable to discover a Patient's Bill of Rights that appears to

---

[4] In Pennsylvania, a personal injury action must be filed within two years. 42 Pa. C.S. § 5524. Pennsylvania courts have adopted the discovery rule for determining the date the limitations period begins. *See Ward v. Rice*, 828 A.2d 1118, 1121 (Pa. Super. 2003). Plaintiff asserts that the earliest he discovered Defendant's tortious conduct was November 7, 2005, (doc. 13, page 2, ¶ 10), which means the deadline for filing suit might have expired on November 7, 2007.

11

cover his situation. This potential theory of recovery thus fails as well.

     We also note Plaintiff cites his Seventh Amendment right to a jury trial. But that right is not absolute. Plaintiff has no right to a jury trial on claims that are legally meritless. *See Stanko v. Maher*, 419 F.3d 1107, 1112 (10th Cir. 2005)(when entry of summary judgment is proper, there is no violation of the Seventh Amendment's right to a jury trial); *Shabazz v. Odum*, 591 F. Supp. 1513, 1517 (M.D. Pa. 1984)(Caldwell, J.)(same).

     We will issue an appropriate order.

                                  /s/William W. Caldwell
                                  William W. Caldwell
                                  United States District Judge

Date: January 31, 2008

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


TONY HENDERSON,                  :
         Plaintiff
                                 :

         vs.                     :    CIVIL NO. 1:CV-07-1365

                                 :
LAWRENCE S. POLLACK,
         Defendant               :
```

*O R D E R*

AND NOW, this 31st day of January, 2008, it is ordered that:

    1. Defendant's motions under Fed. R. Civ. P. 12(b)(6) to dismiss (doc. 4 and 14) are granted, and Plaintiff's complaint is hereby dismissed for failure to state claims upon which relief may be granted.

    2. The Clerk of Court shall close this file.

                              /s/William W. Caldwell
                              William W. Caldwell
                              United States District Judge